STERRY AND WIFE *against* ARDEN AND OTHERS.

A voluntary conveyance, intended as a settlement for a child of the grantor, is void, as against a subsequent purchaser for a valuable consideration, with only implied notice of the previous deed, by the statute of frauds.

But such deed may become valid by matter *ex post facto*, as by some valuable consideration intervening.

Marriage is such a valuable consideration; and, therefore, if the grantee in a voluntary deed, gains credit by the conveyance, and a person is induced to marry her, on account of the provisions made for her in the deed, such conveyance, on the marriage, ceases to be voluntary, and becomes good against a subsequent *bona fide* purchaser for a valuable consideration.

And it makes no difference whether any particular marriage was in contemplation at the time of the voluntary settlement, or not.·

*LOUISA ANN*, one of the plaintiffs in this case, and one of the daughters of *James Arden*, and *Robert Sterry*, her husband, filed their bill to obtain the benefit of a conveyance made to the defendants, *Richard D. Arden* and *De Witt Clinton*, in trust for her, by her father, *James Arden*, and for an account. The circumstances attending the execution and delivery of this deed are the same as those stated in the preceding case, in regard to the deed to the plaintiff's sister, *Eliza B. Arden*; and which it is, therefore, unnecessary to repeat.

The circumstances peculiar to this case, stated in the bill, were, that on the 11th of *December*, 1809, the plaintiffs married, and had a child born, which is still living. That the plaintiff, *Robert Sterry*, when the marriage took place, understood, and believed that *Louisa Ann* had a beneficial interest in the trust premises, according to the conveyance. That *James Arden* fraudulently executed a deed of conveyance of the trust premises to the defendant, *Philip Verplank*, a relation, who, knowing the interest of the plaintiffs in the premises, fraudulently accepted such deed, and claimed to hold the premises by virtue thereof: they, *James Arden* and

*Philip Verplank,* thereby intending to defraud the plaintiffs, and defeat the deed in trust for *Louisa Ann,* and the estate thereby created. That the pretended deed to *Verplank* was dated the 11th of *December,* 1809, and expressed to be in consideration of a large sum of money paid, by him, to *James Arden ;* but that, in fact, the deed was not executed on that, but on some subsequent day, and fraudulently dated anterior to its actual delivery ; and that, if, in fact, it was executed on the 11th of *December,* 1809, it was so executed and accepted, at an hour subsequent to, and with full knowledge of the marriage of the plaintiffs ; and that the consideration, mentioned in the deed to *Verplank,* was never truly paid, or secured by him, to *James Arden,* from the proper funds of *Verplank.*

*James Arden,* in his separate answer, stated, in relation to the sale to *Verplank,* that considering himself, in consequence of *Louisa Ann's* marriage without his consent, as the absolute owner of the premises, he did, on or about the 11th of *December,* 1809, sell and convey the premises to the defendant, *Verplank,* for the consideration of 16,000 dollars, paid to him by *Verplank,* on the delivery of the deed; and that the deed was executed on some day between the 11th and 14th of *December,* 1809, but on which day he did not recollect ; but it was after the intermarriage of the plaintiffs.

*Verplank,* in his answer, stated, that before the execution of the deed from *Arden* to him, he had heard that *Arden* had made some provision for his daughters, out of property situated in *Greenwich-street,* but who informed him he could not recollect, and was wholly ignorant of the circumstances attending such provision, or the manner in which such settlement was made. That at the time the deed from *Arden* to him was executed, he had no knowledge, or notice, that the premises conveyed to him had been previously conveyed to the trustees, on the trust, as stated in the bill of the plaintiffs ; that he purchased the premises for

16,000 dollars, and that, on or about the 11th of *December*, 1809, he received the deed; that for several months prior to the execution and delivery of the deed to him, he was in treaty with *Arden* for the purchase of the premises, and the terms of purchase were partly agreed on, at least one month prior to the 11th of *December*, 1809; and that, at the time of the execution of the deed to him, he had no knowledge, to the best of his recollection, of the intermarriage of the plaintiffs; that he could not recollect the precise day on which the deed to him was executed, but is positive that it was executed between the 11th and 14th of *December*; that he actually paid the whole consideration mentioned in the deed, and has, since the execution thereof, received the rents and profits of the premises in question, to his own exclusive use; that he married the niece of *James Arden*; and he insisted, that the prior deed, in trust for *Louisa Ann*, was voluntary, and void, by virtue of the act, entitled, "An act for the prevention of frauds."

It was proved that the plaintiff, *Robert Sterry*, knew, previous to the marriage, of the settlement which had been made upon the plaintiff, *Louisa Ann*, and that the premises were worth about 20 or 21,000 dollars.

*S. Jones,* jun. and *Riggs*, for the plaintiffs, contended, that the purchase of *Verplank*, though for a valuable consideration, if made with *notice* of the prior voluntary settlement, was void. Though there may be some colour of equity, that a *bona fide* purchaser, without notice, and for a valuable consideration, the vendor being in possession, should be preferred to a prior voluntary settlement, yet there is no such equity in his favour, where he purchases with notice of the prior settlement. Policy does not require, in that case, that there should be such a preference, and it would be unjust. The stat. of 27th *Eliz.* speaks only of *fraudulent*, not voluntary conveyances. And such a construction ought not to be given to the statute, as would defeat a prior voluntary

*1814.*

STERRY
v.
ARDEN.

settlement, in favour of a purchaser with notice of it. Where the *voluntary* deed is fair, legal, and honest, at the time, it will not be defeated by any subsequent matter, unless by the act of the grantee, or where the rights of a purchaser, in equity, require it. A purchaser, *with notice*, is not a *bona fide* purchaser. He attempts, *knowingly*, to defeat the vested rights of other and innocent persons.

The only three cases in *England*, decided since the year 1776, which go to sanction a different doctrine, ought not to be received as authority here, especially, when it is not denied that they are against principle, and not founded on a true construction of the statute. The cases in favour of voluntary settlements are numerous, and a summary of the law on this subject may be found in the opinion of Lord *Ellenborough*, in the case of *Doe, ex dem. Otley, v. Manning*, (9 *East*, 59—63.) These cases all go to show, that voluntary conveyances may afford *presumption* of fraud, yet they are not absolutely void at common law, or under the statute, as against a subsequent purchaser. (See Sir *Ralph Bory's case*, 1 *Vent.* 193. *Jenkins* v. *Kemis*, *Hard.* 398. 1 *Lev.* 150. *Lavender* v. *Blackstone*, 2 *Lev.* 146. *Garth* v. *Mois*, 1 *Keb.* 486. *Style*, 441—446. *Gilb. Law of Evid.* 201. (245.) 2 *Wils.* 357. *Cowp.* 434. 705. 2 *Bl. Com.* 300, 301. 1 *Vern.* 364. 3 *Atk.* 238.) Love and affection are a good consideration for a conveyance, and the deed, in this case, is most clearly honest and meritorious. (2 *Bulst.* 225.)

The *English* judges, in late decisions, have regretted that a different doctrine has prevailed; but they thought too much property was held under it to allow them to decide differently; though, if the case were *res integra*, they would have given a different construction to the statute, and supported these honest family settlements. (1 *Fonbl. Eq.* 269, 270. n. g. *Sugden's Law of Vend.* 433. 1 *Bay's S. C. Rep.* 173.)

This court is not embarrassed with any such difficulty; and ought to disregard a rule so repugnant to principle, and to the good sense and sound construction of the statute.

That *Verplank* is chargeable with notice of this prior deed, there can be no doubt. Notice may be actual, or con-structive, and what is enough to put the party on inquiry, is sufficient notice. (1 *Atk.* 489. 2 *Atk.* 54. 174. 2 *Bro.* 291. 1 *Ch. Cas.* 28. 259. 2 *Vesey,* jun. 440. 2 *Ch. Cas.* 246. 1 *Fonbl. Eq.* 271. *Newland on Contracts,* 54. *Sugden's Law of Vend.* 498.)

Again, the marriage of the plaintiff intervening prior to the purchase, it is to be presumed to have been an induce-ment to the settlement, and forms a consideration, *ex post fac-to,* which makes the conveyance valid and effectual, as if given, originally, for a valuable consideration. (*Sugden's Law of Vend.* 436, 437. 1 *Sid.* 133. *Skinner,* 423. 1 *East,* 95. 10 *Johns. Rep.* 185. 9 *Vesey,* 190. 9 *East,* 69. 5 *Vesey,* 862. *Bac. Abr. Frauds,* (C.) *Newland on Contracts,* 404. *Roberts on Fraud. Con.* 195. *Prec. in Ch.* 275.)

*Harison* and *Harris,* contra, contended, that there was no delivery of the deed, and that it having been retained by the father in his possession, it was inoperative. (1 *P. Wms.* 577.)

The deed, in this case, was purely *voluntary ;* it is proved that the one dollar, mentioned as the consideration, was never paid. Then, *Verplank,* being a *bona fide* pur-chaser for a valuable consideration, without notice, the prior *voluntary* deed is void as against him. *Verplank,* in his answer, denies that he had notice, and no notice, in fact, has been proved. A mere rumour, or report, of the kind sta-ted, is not sufficient to charge a party with notice. The grantor had been in continued possession since the date of the deed, for four years, and *Verplank* had a right to con-sider him as the owner. The case of *Ottley* v. *Manning.*

(9 *East*, 69.,) is conclusive on the point, and there are nu- merous cases to the same effect, which prove, incontestably, that it is the established rule in *England*, that a voluntary conveyance, under the statute of the 27 *Eliz.*, is fraudulent against a subsequent purchaser for a valuable consideration. (*Tothill's Rep.* 257, 258. 1 *Ch. Rep.* 78. 2 *Vesey*, 10: *Woodie's case, cited Cro. Jac:* 158. 2 *Bl. Rep.* 1019. *Cowp.* 279. 2 *Bro.* 148. 4 *Bos. & Pull.* 332. 2 *Taunt. Rep.* 82. 4 *Cruise, Deed*, tit. 32. ch. 22. s. 29—32. *Sugden's Law of Vend.* 2d ed. 432.)

The cases cited to the contrary are chiefly loose *dicta*, and the opinion of Lord *Mansfield*, in *Chapman* v. *Emery*, (*Cowp.* 279.,) was prior to his *dictum* in *Cadogan* v. *Ken-nat*, and in *Doe* v. *Routledge*.

Lord *Ellenborough*, in *Otley* v. *Manning*, does not deny that this is the construction of the statute, but is inclined to think that the statute itself ought to have been different.

The *marriage*, in this case, did not render the considera- tion, of the prior conveyance, *valuable*. Being against the consent of the grantor, it could be no inducement to him in making the settlement. The marriage could be no benefit, or comfort, to him, when against his will. Such a marriage cannot change the original character of the conveyance.

Again, it is not proved that *Sterry* knew of the convey- ance before the marriage ; if he did, he must be presumed, also, to have known of the conditions annexed to the deed ; and, then, he married subject to the effects and consequences of those conditions.

THE CHANCELLOR. The same questions arise in this case *Ante*, p. 240. as in that of *Souverbye and wife* v. *J. Arden and others*,* on the delivery of the deed. The two deeds were drawn and executed together, and their history is, in all respects, the same. The proof, then, in each cause, is the same, to every essential purpose ; and though *Bleecker*, one of the subscribing witnesses to each deed, was not examined in this last case, yet his testimony, and that of the other witnesses

in the other cause, applies equally to the execution and disposal of deeds, and it was averred upon the argument, that the depositions in each cause were, by consent, to be read in the other. Whether this be so, or not, does not appear to be in any way material ; for, I consider the proof taken in this cause to be the same, in effect, as that in the other, and quite sufficient to establish the delivery of the deed, in 1805. We have, in this case, the additional deposition of *R. I. Livingston*, who states, that he saw the deed in possession of *Louisa*, the grantee. The opinion which I have already given in the other case, would then apply to, and govern this, was it not for a new matter of defence set up by *Verplank*, who claims to be a subsequent *bona fide* purchaser. This necessarily leads me to the consideration of two very important points arising out of this case :

1. Whether the voluntary conveyance to the daughter was fraudulent and void, under the 3d section of the act of the 26th of *February*, 1787, [s. 10. c. 44., and which is the same, precisely, as the statute of 27th *Eliz.* c. 4.,] as against a subsequent purchaser for valuable consideration; and, if so, then,

2. Whether the intervening marriage of the plaintiffs, between the settlement and the purchase, did not restore the first deed, and give it value and validity.

1. I shall consider *Verplank* as a purchaser for a valuable consideration. He gave 16,000 dollars in cash, and, though it may have been a very cheap purchase, there was not such inadequacy of price as to justify an inference of fraud. I shall, also, consider him as a purchaser without actual notice of the settlement upon the plaintiff. He declares in his answer, that he had no knowledge or notice of the conveyance of 1805, when he purchased, and there is not proof to contradict this answer. But I hold him chargeable with constructive notice, or notice in law, because he had information sufficient to put him upon inquiry. He admits that, before the execution of the deed, he had heard that the grantor had made some provision for his daughters out of property in *Greenwich-street ;* and there is no evidence in the

1814.

STERRY
v.
ARDEN.

case, that the grantor owned any other property in that street, except the lots included in the settlement. Here, then, is the case of a fair voluntary conveyance, made by a father to his daughter, he not appearing to be indebted at the time, and a subsequent sale made by him, with intent to defeat that settlement, but made for a valuable consideration, and to a purchaser chargeable only with notice in law. The question arising on this first point is definitively settled, in *England*, by determinations of a recent date in the four great courts at *Westminster ;* and it is impossible not to feel all the respect which is justly due to decisions of so much weight and authority. (*Evelyn* v. *Templar*, 2 *Bro.* 148. *Doe, ex dem. Ottley* v. *Manning*, 9 *East*, 59. *Doe* v. *Martyn*, 4 *Bos. & Pull.* 332. *Hill* v. *The Bishop of Exeter*, 2 *Taunt.* 82. *Doe* v. *Hopkins, in the Excheq.*; cited in 9 *East*, 70.) The voluntary deed is considered fraudulent and void against the subsequent deed, and it is held to be immaterial whether the purchaser had, or had not, notice of the prior deed ; and it was an old settled rule, decided in *Gooch's* case, (5 *Co.* 60.,) that notice to a purchaser, of a fraudulent deed, was of no consequence, as it was still void.

It has been suggested, that this is a principle settled in *England* since our revolution ; but it appears to me that the late cases have declared no new doctrine, and have only followed the rule as they found it, long before settled by a series of judicial decisions of too much authority to be there shaken. In the late case in *East's Rep.* Lord *Ellenborough*, in delivering the opinion of the K. B., gave a full and accu ate view of most of the cases on both sides of the question, from the time of the statute of *Elizabeth ;* and no one who examines that opinion attentively, and, especially, if he also inspects the original cases referred to, can well hesitate as to the correctness of the conclusion drawn by the court, that "the weight, number, and uniformity of the authorities, in favour of the rule as there decided, do very much preponderate."

It cannot be expected that I should attempt to go over,

in detail, the numerous cases which have been so ably arranged and reviewed, and so fairly stated in the opinion referred to. I shall content myself with merely alluding to them, and with the remark, that those cited in favour of the position, that the voluntary deed is only, *prima facia*, fraudulent as against the subsequent purchaser, are, generally, mere *dicta*, and not solemn adjudications upon the point.

In favour of the voluntary settlement, are Sir *Ralph Bovy's case*, 1 *Vent.* 193. *Jenkins* v. *Kemeshe*, *Hard.* 398. 1 *Lev.* 150. *Lavender* v. *Blackstone*, 2 *Lev.* 146. *Garth* v. *Mois*, 1 *Keb.* 486. *Anon.* *Sty.* 446. *Gilbert's Law of Ev.* 201. *Standon* v. *Charlwood*, *MSS.* cited 9 *East*, 64. Lord *Mansfield*, in *Cadogan* v. *Kennett*, *Cowp.* 434., and in *Doe* v. *Routledge*, *Cowp.* 708. 710.

In favour of the subsequent purchaser, are *Woodie's case*, cited in *Colville* v. *Parker*, *Cro. Jac.* 158. *Prodgers* v. *Langham*, 1 *Sid.* 133. *White* v. *Hussey*, *Prec. in Ch.* 14. *Tonkins* v. *Ennis*, 1 *Eq. Cas. Abr.* 334. pl. 6. *White* v. *Sansom*, 3 *Atk.* 412. *Townsend* v. *Windham*, 2 *Ves.* 10. *Roe* v. *Mitton*, 2 *Wils.* 356. *Goodright* v. *Moses*, 2 *Bl. Rep.* 1019. *Chapman* v. *Emery*, *Cowp.* 278. Lord *Kenyon*, in *Nunn* v. *Wilsmore*, 8 *Term*, 528. There are, however, some cases which are not mentioned in the opinion delivered by Lord *Ellenborough*, and which, as it seems to me, give additional weight to the opinion which has been adopted. Thus, in *Walker* v. *Burrows*, (1 *Atk.* 93.,) Lord *Hardwicke* observes, " It has been said, all voluntary settlements are void against creditors, equally the same as they are against subsequent purchasers, under the statute of 27 *Eliz. ch.* 4., but this will not hold;" and he afterwards adds, " But, upon the statute of the 27 *Eliz.*, which relates to purchasers, there, indeed, a settlement is clearly void, if voluntary, that is, not for a valuable consideration, and the subsequent purchasers shall prevail to set aside such settlement." Again, in *Upton* v. *Basset*, which was shortly after the statute, (*Cro. Eliz.* 445.,) there was an evident admission and understanding of all the judges,

that a voluntary conveyance was void, under the 27 *Eliz.*, against a subsequent *bona fide* purchaser for valuable consideration. The case of *Taylor* v. *Stile*, is cited by *Sugden*, p. 483., as being decided in chancery, in 1763, and in which Lord *Northington* held it to be clear, that a subsequent purchaser for valuable consideration, though with notice, should set aside a voluntary settlement; and Mr. J. *Bathurst* said, he knew that Lord *Hardwicke* had determined so in twenty instances. In *Douglass* v. *Waad*, (1 *Ch. Cas.* 99.,) the court of chancery set aside a voluntary conveyance as fraudulent against a subsequent purchaser, and though the court are reported to have said, " that all voluntary conveyances are, *prima facie*, to be looked upon as fraudulent against purchasers, unless the contrary be made to appear," yet the decree was conformable to the principle contended for by the purchaser, for it set aside the voluntary conveyance as fraudulent, though nothing appeared but the want of valuable consideration to make it so. It is, also, worthy of notice, that, in the original text of the treatise of equity, published in 1737, and of which *Fonblanque* is the editor, (1 *Fonb.* 268.,) the same doctrine is explicitly laid down. In short, the principle set up in favour of the purchaser, has been so long and so well established, by a series of authoritaive decisions, supported by the most eminent judges, that I feel bound by them, whatever doubts I might have had upon this construction of the statute, if I had been at liberty to follow my own reflections. When a principle has taken such deep root, and received such uniform support, it belongs to the legislature, and not to the courts of justice, to suppress or destroy it.

It has been observed, that the present defendant was not a purchaser with actual notice of the deed of settlement. He does not, therefore, come within the exception for which some have contended. Doubts have been frequently expressed, whether the better construction of the statute would not have been to support the voluntary conveyance

against purchasers for a valuable consideration, *with notice ;* (and to that opinion I strongly incline ;) yet it is pretty evident, that the allusion here was only to the case of *actual notice,* where the purchaser was intentionally and premeditatingly defeating the fair claims and expectations of the prior grantee.    (9 *East,* 71.    4 *Bos. & Pull,* 335. 1 *Fonb.* 269. n. *g.*)    Equity does make a distinction between purchasers with and without notice of the prior voluntary settlement made without fraud ; but it is only when the former comes for the aid of the court to compel a specific performance, and it then refuses its aid, and leaves him to his remedy at law.    (*Bennet* v. *Musgrove,* 2 *Ves.* 52.    *Oxley* v. *Lee,* 1 *Atk.* 625.)

2. The next point is, whether the marriage of the plaintiffs, before the purchase, did not give a new character to the first deed, so as to entitle it to preference.

It is admitted, that the deed to *Verplank* was made and executed after the marriage, and in consequence of it, and the testimony in the case is decisive, (I refer to the depositions of Mrs. *Servant* and Colonel *Hawkins,*) that the plaintiff, *Robert Sterry,* married with previous knowledge of this deed of settlement on his wife.    Under these circumstances, I consider the law to be, that the first deed became good and valuable, and ought to prevail.    The marriage was a valuable consideration, which fixed the interest in the grantee against all the world ; she is regarded, from that time, as a purchaser, and as much so as if she had then paid an adequate pecuniary consideration.    It has been a principle of long standing, and uniformly recognised, that a deed, voluntary or fraudulent in its creation, and voidable by a purchaser, may become good by matter *ex post facto.*    (1 *Sid.* 133. 1 *East,* 95.)    It is the constant language of the books, and of the courts, that a voluntary deed is made good by a subsequent marriage, and a marriage has always been held to be the highest consideration in law.    (*Co. Litt.* 9. *b.*)    The cases do not require that the settlement should have been

1814.

STERRY
v.
ARDEN.

1814.

STERRY
v.
ARDEN.

made with a view to any particular marriage ; it is suffi-
cient that the settlement was afterwards known to third per-
sons, and was one probable inducement to the subsequent
marriage.    Indeed, in *Brown* v. *Carter*, (5 *Ves.* 877. 888,
889.,) Lord *Alvanley* did not think it very material to prove
that the marriage was even made with notice of the volun-
tary settlement, as the knowledge of the circumstances of
the party, and the inducement, were to be presumed.    The
principle is, as it is there stated, that it would be a fraud on
the husband, if the probable inducement was to be after-
wards withdrawn, and that it would be gross injustice to take
away the benefit of the settlement from the married parties,
and their issue.    The case of *Prodgers* v. *Langham*, (1
*Sid.* 133.,) is a leading one on this point, and it has always
been mentioned as good law.    That was a case of a volunta-
ry conveyance, in trust, for an only daughter for twenty-
one years, to the intent that the profits, before marriage,
should be applied to her maintenance, and, if she married
with the father's consent, then in trust for her during the re-
sidue of the term.    The court held, that the conveyance to
the daughter was a voluntary conveyance, and would have
been void as against the defendant, a subsequent purchaser
for valuable consideration, if the marriage had not intervened,
yet when that took effect, it ceased to be voluntary, and be-
came supported by a valuable consideration, which was unim-
peachable, inasmuch as the marriage was an advancement to
the daughter, and the husband was induced (though that fact
does not appear in the case) by the prospect of this provi-
sion.    The case of *Kirk* v. *Clark*, (*Prec. in Ch.* 275.
2 *Eq. Cas. Abr.* 45. pl. 13.,) is equally in point ; it was
there held, by Lord Ch. *Cowper*, that a voluntary settle-
ment on a son, before any treaty of marriage, or the con-
templation of any, became valuable upon his marriage, which
was made with notice of it, the settlement being regard-
ed as a principal inducement.    A similar decision was made
in the case of the *East-India Company* v. *Clavell*, (*Prec.*

*in Ch.* 380, 381.,) and the proof here, brings this case pre-    
cisely within the reach of those I have cited ; for here was
not only actual notice of the settlement, but inducement to
marry in consequence of it.

The conclusion from these cases, and from the principles
which they lay down, appears to me to be, that the marriage
of the daughter, in this case, changed the character of the
previous settlement, and placed her in the light of a pur-
chaser for a valuable consideration, and gave her preference
to any subsequent purchaser. I shall, therefore, set aside
the deed to *Verplank*, and make the same decree as in the
former case.(*a*)

N. B. This decree was unanimously affirmed, on appeal
to the court of errors, *March* 28th, 1815. [See 12 *Johns.
Rep.* 536.]

(*a*) Vide *Atherly on Marriage and Family Settlements*, p. 178—198.
who has examined, at large, the question, whether a *voluntary settlement* is
fraudulent and void, under the **27** *Eliz.*, against a subsequent purchaser,
merely from its being voluntary. He has taken a view of the subject some-
what new, and he concludes that, according to the true construction of the
statute, a voluntary settlement, as such, is void against a subsequent pur-
chaser for a valuable consideration, without notice, but not against a pur-.
chaser with notice. In the latter case, he holds the settlement to be valid.