Daugan, Ch.,
dissenting. Wm. C. Footman, originally an inhabitant and citizen of South Carolina, but afterwards residing in Bryan County, in the State of Georgia, at the last mentioned place executed a deed, hearing date the 5th day of March, 1832, by which he conveyed to Edward Footman sundry negroes, therein named, constituting, so far as appears, all his property, and certainly the great bulk of his estate, in trust for the sole and separate use of his wife, Mariah H. Footman, and of his children, then in esse, and any future issue to be begotten between the said Wm. C. Footman and his wife Mariah H. Footman. At the date of the deed the parties and slaves resided in Bryan County, in the State of Georgia, and it appears to have been duly registered according to the statutory provisions of that State. Chancellor Caldwell (whose statement of the proof Chancellor Donkin in the main adopts,) says that “the donor had formed the intention of removing to South Carolina before the execution of the deed, and accordingly did remove to this State afterwards.” After the execution of the deed the negroes remained in Georgia about a year, and were then brought to this State. There is no evidence that the trustee, who did not reside in South Carolina, ever accepted the trust, or had any knowledge of the deed by which it was created. Wm. C. Footman and family, on their return to South Carolina, settled in Williamsburg district, where Mrs. Footman, though not engaged in mercantile pursuits or trade of any kind, was reputed to be a feme sole trader. It is a popular error that any married woman, whether engaged in trade or not, can become a free dealer, as it is called, simply by a publication of her intention to assume that *43 character. The property remained in the possession of Wm. 0. Footman, and was ostensibly his own. The only suspicion upon his title was, that Mrs. Footman, as a sole trader, might have some claim upon it.
Under these circumstances, the defendant, Pendergrass, on the 2d day of February, 1837, loaned Footman and wife $>2,282, taking their bond, payable in ten years; and, to secure the payment, took from them a mortgage of a tract of land, and four slaves (the slaves being some of those embraced in the trust deed.) And afterwards, on the 11th March, 1845, Footman and wife being indebted to Pendergrass for arrears of interest and for supplies of com and advances of money, executed to him a bond for $1,070, payable on the 11th March, 1846; and, to secure the payment, they executed a mortgage of sundry other negroes, being of those embraced in the deed of trust. It was not proved that the existence of this deed was known to more than two persons in South Carolina. The defendant was advised, on loaning the money, to have the signature of Mrs. Footman to the bond; but it was not shewn that the ground of this advice was the fact of the property being settled in trust. But, on the contrary, the defendant, answering responsively to the bill, has stated his utter ignorance of that fact, and that the reason of his joining Mrs. Footman in the bond and mortgage was the general impression that she was a sole trader. One thing is certain, the Footmans (husband and wife,) borrowed the defendant’s money to a large amount, (considering their means,) and mortgaged ne-groes to secure the debt, without giving him the slightest intimation that the property upon which they obtained the loan was conveyed by a prior deed of trust. This certainly was a vile fraud upon the defendant, whatever may have been the character of the trust in its inception.
Both the Chancellors, who have heard this cause on circuit, have decided that there was no actual fraud proved as to this deed at its execution; or, in other words, that no fraud was then meditated. Upon this question of actual fraud, according to the proof made, I should have come to the same conclusion. But I *44 cannot say that my suspicions have not been strongly awakened, and that, in my apprehension, there is not, if I may be allowed to use the expression, an odor of fraud arising from the circumstances. And if (according to some of the decisions) a voluntary conveyance, coming into collision with a subsequent bona fide conveyance for valuable consideration, is subject to the prima facie presumption of fraud, which it is necessary to rebut, then I think the complainants have most signally failed; for in my judgment, the circumstances elicited on the trial, if such prima facie presumption is to have its weight, serve rather to strengthen than to rebut it.
But the great question of this case, and one that is highly important in reference to its general bearing, I will now proceed to discuss. Is it true, as an abstract legal proposition, that a voluntary conveyance, without actual fraud in its origin, is valid against the claim of a subsequent purchaser for valuable consideration, and without notice 7 Upon this question the majority of this Court, as at present constituted, has responded in the affirmative. I feel constrained to say, in reference to the judgment which has been announced, that I differ toto codo. My opinion on this question has not been hastily adopted, nor formed at the present time. It is coeval with my earliest acquaintance with this branch of the law. It was derived from the most authoritative expositors, and has been strengthened by subsequent study and research. An opinion thus deliberately formed, I find it difficult to yield without a struggle; more particularly as I have read or heard nothing to shake it, and find myself supported by some of the ablest and most learned Judges who have ever presided in the English or American courts.
Is the legal proposition, as I have above stated it, true? There are few, I presume, who would have the temerity to deny that the converse of the proposition is the law that at this day prevails, and for ages past has prevailed, in Westminster Hall. Indeed, many of the English decisions, (in fact, by far the greater part,) go so far as to say that want of notice is immaterial, and that the prior voluntary conveyance, though unimpeached for *45 actual fraud, is void against the subsequent purchaser for valuable consideration, even with notice. We know, from the most authentic judicial history of those times, that this construction of the statute 27 Eliz. prevailed in the English courts from a period almost cotemporary with its enactment. In Upton vs. Bassett, Cro. Eliz. 445, (only ten years after the enactment of 27 Eliz.) “there was an evident admission and understanding,” says Chancellor Kent, in Sterry vs. Arden, (1 Johns. Ch. 261,) “ of all the Judges, that a voluntary conveyance was void under the 27 Eliz. against a subsequent bona fide purchaser for valuable consideration.” I have examined this case, and concur with the learned Chancellor in the inference which he has deduced from it. I remark, further, that Owen, J., “accorded” as the reporter has expressed it, with the other Judges “in omnibus, and said that he was present at the making of the statute.”
Early in the next reign, in the 5th of James the first, the same construction was recognized in a manner still more explicit. In Colville vs. Parker, (Cro. Jac. 158,) which was an information in the King’s Bench against fraudulent conveyances, the case of one Woodie was cited as having been before that time decided, where it was held that a voluntary conveyance was void against a subsequent purchaser without notice, “because,” as it was said, “it was a voluntary conveyance at first, and shall be deemed fraudulent from the beginning.”
The troubled and disastrous reign of the first Charles furnishes no case or precedent, so far as my researches have extended, bearing upon this question. In that period of civil strife cases involving this question either did not arise, or the history and record of them have been swept away and lost amidst the convulsions and confusion of 'the times. Nor does the judicial history of England under the Commonwealth, and the protectorate of Cromwell, throw any light upon this subject.
The succeeding reign of Charles the Second furnishes several cases. The cases of this reign are much relied on by those who have advocated the opposite doctrine to that which I have adopted. At that period it was thought necessary that the ques *46 tion of fraud should he submitted to a jury. And in Garth vs. Mois, (Keb. 486, 15 Car. II.,) it was held by the Court, in submitting “ evidence to a jury on this question, that a voluntary conveyance executed, is not fraudulent because voluntary, hut is great evidence of fraud as against an after conveyance made bona fide, because the statute avoids such deeds as are bona fide and on consideration, if made ea intentione to defraud purchasers. And therefore this fraud must be found by a jury.” I have extracted the whole case from the report. It is but a nisi prius decision at best, and very meagerly and unsatisfactorily reported. Let it go for what it is worth.
Jenkins vs. Kemeshe, 1 Lev. 150, (in King’s Bench, 16 Car. II.,) is also a case which has been much relied on by those who advocate a contrary doctrine. But on an examination of that case it will be found not to be in point. Sir Nicholas Kemeshe was tenant for life in certain messuages; remainder to his son Charles in tail general, with remainder over. They, (Sir Nicholas and his son Charles,) on the marriage of Charles with Blanche, his first wife, and in consideration of the marriage and a marriage portion of £2,500, levy a fine and recovery, to the use of Sir Nicholas for life, remainder to Charles and the heirs of his body begotten on Blanche, remainder to the heirs of the body of Charles generally, with power on the part of Sir Nicholas to charge all and singular the premises with the payment of £2,000, by way of mortgage. Upon which Sir Nicholas and Charles, without reciting the power, convey a portion of the premises to Jenkins, by way of mortgage. Sir Nicholas dies. Blanche also dies, without issue. And Charles marries a second wife, by whom he has issue the defendant. And the money not being paid, the plaintiff, the son of Jenkins, brings ejectment. Upon the trial two questions arose. The first was as to the execution of the power, and whether it was legal and valid. And the second question was, whether the consideration of the settlement, which was held to be valuable, extended to the issue of the second marriage. It was decided that it did. The defendant was considered as one holding under a purchase for valu *47 able consideration, and the judgment of the Court was for him.
In Lavender vs. Blackstone, (2 Lev. 146, 27 Car. II.,) a settlement after marriage was held to be purely voluntary, and void against a subsequent mortgagee.
In Prodgers vs. Langham, (1 Sid. 133,) cited by Ellenborough in Ottley vs. Manning, a father conveyed an estate to trustees for the benefit of his daughter till her marriage, and after her marriage to raise a portion for her. The conveyance to trustees for the benefit of the daughter was perfectly free from fraud in fact. Yet it was held to be a voluntary conveyance in its origin, and void by the statute 27 Eliz. against purchasers for valuable consideration.
In Jones vs. Purefoy, (1 Vern. 46, A. D. 1682,) a voluntary settlement, though unimpeached for actual fraud, was vacated in behalf of a subsequent mortgagee.
White vs. Hussey, was decided in 1690 (Prec. in Ch. 14.) Here the question arose directly between the person claiming under the voluntary settlement, (who was the settler’s mother,) and the subsequent purchaser, who claimed in the character of a mortgagee for valuable consideration without notice. “ Upon hearing the cause,” says the reporter, (Thos. Finde, Esq.) “ the Court unanimously decreed for the plaintiff, (the mortgagee,) though it was strongly insisted by the defendants that they could not do so without directing a trial at law, whether the settlement was fraudulent or not: for that fraud or not, was triable only by a jury, especially where the fraud, if any, was only from its being voluntary. But the commissioners of the great seal were all of the opinion that they might decree a conveyance to be fraudulent, merely for being voluntary. And so they did in this case.”
In Sir Ralph Bovey's case, (Vent. 193,) Lord Hale did say “that though every voluntary conveyance carries an evidence of fraud, yet it is not upon that account only always to be reckoned fraudulent, or to be avoided by a subsequent purchaser for a valuable consideration.” He had said in Lavender vs. Blackstone, already cited, that a voluntary conveyance is only prima *48 facie evidence of fraud. His opinions, as quoted in both of these cases, are dicta merely. For in Lavender vs. Blackstone, the voluntary settlement, though free from actual fraud, was set aside in favor of the assignee of the purchaser for valuable consideration. And in Sir Ralph Bovey’s case, the settlement was not voluntary, but was founded upon the consideration of marriage, which is always regarded as valuable, and it was held valid against the subsequent grant to Sir Ralph Bovey, founded upon a money consideration.
In 1726, in Gardener vs. Painter, (Cas. Temp. King, 65,) Lord King said it could never be a question whether a voluntary settlement be good against purchasers.
Two years later, in Tonkins vs. Ennis, (Mich. T. 1727, 1 Eq. Cas. Abr. 334,) it was adjudged by the whole Court that “a purchaser for valuable consideration shall hold or take place against a prior voluntary settlement, though he had express notice thereof at the time; such voluntary settlement, by the 27 of Eliz., being made void against a purchaser, with or without notice.”
An early distinction was taken by the English Judges in their construction of the 13th Eliz., (the object of which was to protect the rights of subsisting creditors,)■ and the 27th Eliz., (the design of which was to protect the rights of future or subsequent purchasers.)
Russell vs. Hammond, (1 Atk. 13, A. D. 1738,) was a case arising under the 13th Eliz., and was between creditors and the parties claiming under a prior voluntary settlement. There was no proof of actual fraud; and it was held that, a settlement being voluntary, is not for that reason fraudulent against creditors under the 13th Eliz., but evidence of fraud only: and that it was not fraudulent where the person making it was not indebted at the time.
In Walker vs. Burrows, (1 Atk. 93, A. D. 1745,) Lord Hard-wick, who also decided the case last cited, observed, “it has been said that all voluntary settlements are void against creditors, equally the same as they are against subsequent purchasers under the 27th Eliz. But this will not hold; for there is always *49 a distinction upon the. two statutes. ’Tis necessary on the 13th Eliz. to prove that at the making of the settlement the person conveying was indebted at the time, or immediately after the execution of the deed, &c. But upon the statute 27 Eliz., which relates to purchasers, there indeed a settlement is clearly void if voluntary — that is, not for valuable consideration. And the subsequent purchaser shall prevail to set aside such settlement. But this can only he applied to subsequent purchasers, and therefore there is a plain distinction between the two statutes.”
I pause here for the purpose of making a passing comment on these decisions of Lord Hardwick, and of developing more fully the distinction he has drawn in the construction of these two statutes. The 13th Eliz. being directed against the perpetration of frauds upon subsisting creditors, it is obvious that its provisions do not apply where he is not indebted at the time, or immediately afterwards; which the Courts have, by a,liberal construction, decided to be the same as existing indebtedness. But the 27th Eliz. is for the relief not of purchasers whose titles or claims were prior to the voluntary settlement, for these need no protection; but for the relief of subsequent purchasers for valuable consideration, (and as the American cases and some of the later English authorities say,) without notice. A party making a voluntary settlement, who is indebted at the time, may yet commit no actual fraud, and never contemplate any fraudulent act whatever. But in every instance of a subsequent sale to a purchaser for valuable consideration without notice, there is a gross and actual fraud perpetrated by the vender upon the ven-dee. And policy as well as authority warrants the construction that makes this positive fraud relate back to the time of the prior voluntary settlement, and taints it with an implied premeditated and fraudulent intent. There is another distinction between the case of a creditor, and that of a purchaser, which entitles the latter to greater consideration. The creditor gives his credit upon the faith of the whole estate of his debtor; while the purchaser and mortgagee (who through the whole course of the English adjudications on this subject is regarded as a pur *50 .chaser,) looks only to the specific property purchased or mortgaged.
I resume my review of the English cases. And I will here go hack a few years for the purpose of noticing the case of Oxley vs. Lee, decided A. D. 1736, and reported in a note in 1 Atk. 625. In this case there was a conveyance to trustees, for the consideration of love and affection, to the use of the donor’s daughter. The plaintiff, Oxley, afterwards purchased the premises for valuable consideration. The decree was, that the trustee should convey the legal estate to the purchaser, and that the deed of settlement should be delivered up.
About this time (namely, in 1737,) the original text of the “Treatise of Equity,” of which Fonblanque is the editor, was published. This is confessedly a work of great authority. In this treatise the doctrines held by Lord Hardwick as to the rights of purchasers under the 27th of Eliz. are explicitly asserted. (1 Fonb. 267.) Fitzer vs. Fitzer, (2 Atk. 512, A. D. 1742,) was a case in which Fitzer, the defendant, after a separation from his wife, the complainant, made a voluntary settlement upon her and his daughter, out of property which he had acquired by his wife. The husband, afterwards became a bankrupt, and assigned to the other defendant, Stephens, all his estate, real and personal, including the property settled upon his wife and daughter. Stephens, by the assignment to him, combined the character of creditor and purchaser. The Lord Chancellor (Hardwick) said to counsel, during the progress of the cause, “have you any instance of its being held, in this Court, that a conveyance from a husband to his wife, without any pecuniary consideration moving from the wife, has been held to be good against creditors ?” The Attorney General, who appealed for the complainant, admitted that natural love and affection would not be a consideration, but suggested that there was a deed of separation, and the liability of the husband for the maintenance of the wife and daughter would be a sufficient consideration. Nevertheless the Court decreed the settlement void to the extent of the claim of the defendant, Stephens.
*51 Taylor vs. Jones, (2 Atk. 600, A. D. 1743,) before the Master of the Rolls, was a contest between the creditors of the husband, Jones, and the persons claiming under a voluntary settlement made by him upon his wife and children. There was no pre-tence of actual fraud. “The first question,” says the Master of the Rolls, “is, whether this settlement, made m trust for the wife and children, is fraudulent in general, as it stands single and independent of the plaintiffs, the creditors. It has been insisted on, for the wife and children, that this settlement is for a good consideration; nay, looked upon very often as a valuable consideration, since they are, in some respects, esteemed creditors in regard to the father. There is no doubt but that it is a valuable consideration as against a father, even after marriage, and even against a voluntary conveyance. But I consider it a standing rule, as to creditors for a valuable consideration, that such a settlement is always looked upon as fraudulent,” &c. And accordingly it was so decreed.
In White vs. Sanson, (3 Atk. 409, A. D. 1746,) which was also a case before Lord Hardwick, the husband and wife had joined in a settlement out of the wife’s estate not reduced to possession. This was held not to be fraudulent. “For nothing,” said his lordship, “ could be more just than for the husband to provide for the wife and children out of her own estate.” He observed that this “at law would not be deemed fraudulent against creditors; nay, even against a subsequent purchaser, which is stronger; because I hardly know an instance where a voluntary conveyance has not been held fraudulent against a subsequent purchaser.”
In Lord Townshend vs. Windham, (2 Ves. Sr. 10,) Lord Hardwick said: “ On the 27 of Eliz., every voluntary conveyance made, where afterwards there is a subsequent conveyance for valuable consideration, though no fraud in that voluntary conveyance, nor the person making it at all in debt; yet the determinations are that such mere voluntary conveyance is void in lato by the subsequent purchase for valuable consideration.”
In Hamilton vs. Mitton, (2 Wilson, 358, note, 6 Geo. 3,) Lord *52 Chief J. Wilmot said. “ the Stat. 27 Eliz. was made in favor of subsequent purchasers paying a valuable consideration, as against persons whose title is not supported by such consideration.”
Goodnight vs. Moses, (2 William Blackstone’s Rep. 1019, 15 Geo. 3,) was the case of a voluntaty settlement and a subsequent sale for a valuable consideration. Lord Chief J. De Grey said, “ the deed of 1747 was only a voluntary conveyance within the true meaning of the Stat. 27th Eliz., being founded upon a good and not upon a valuable consideration; and therefore cannot be set up against a bona fide purchaser.”
The case of Taylor vs. Still is cited by Sugden (p. 483) as having been decided in 1763. In this case Lord Northington is said to have held it beyond dispute, that a voluntary settlement should be set aside in favor of a subsequent purchaser for valuable consideration, even with notice. And Bathurst, J., said he knew Lord Hardwick had so decided in twenty instances.
In Chapman vs. Emery, (1 Cowp. 278, A. D. 1775,) one Richard Emery after marriage made a settlement of the premises in question upon himself for life, remainder to his wife, remainder to their issue in tail. And three years afterwards he mortgaged the same premises to secure the payment of a bona fide debt then contracted. There was some contradictory evidence as to whether the mortgagee had notice. There was no allegation of actual fraud in the voluntary settlement. Lord Mansfield held that the mortgagee was a purchaser, and that the settlement was void as to him. He went further, and held that notice was not material.
I have thus presented a careful and chronological analysis of all the English cases and authorities that were accessible to me, for the purpose of shewing what a slight foundation exists for the assumption that, at the period of the separation of the North American colonies from the mother country, the question that I have been discussing was not, settled in. England, and that diversity of opinion prevailed in that country on the question. I think I may safely say that at that period the right of a purchaser for a valuable consideration to set aside a mere volun *53 tary settlement or conveyance, was as well settled as any other principle of English jurisprudence whatever; and nothing hut what were there considered the most apocryphal cases (and those very few,) could he adduced in support of the contrary doctrine. Chief Justice Marshall, in Cathcart vs. Robinson, (5 Peters’s R. 264,) has lent his high reputation and commanding influence to the promulgation of this error. He felt himself at liberty to adopt the dicta of Lord Hale, which had been uttered more than a century before the revolutionary war, that a voluntary conveyance as against a subsequent purchaser was to be regarded as only prima facie fraudulent. If this rule were applied to Footman vs. Pendergrass, the deed should be set aside. For if the onus is upon Footman, to shew that the settlement is not fraudulent, he has failed most signally; for to my judgment the circumstances of the case the rather tend to strengthen the presumption of law.
After all, it is a very great fallacy to refer to the period of the American Revolution for the purpose of determining whether any principle of the English Chancery system is of force. At all events, it is not applicable as a criterion in South Carolina, where the English Chancery system was adopted long before that time by an Act of our Provincial Legislature.
I will now proceed with my review of the English decisions. In Cadogan vs. Kennet, (2 Cowp. 432,) A. D. 1776, which was a case of creditors arising under the 13th Eliz., and not under the 27 Eliz., Lord Mansfield decided, that a fair voluntary conveyance is good against creditors. He says the Statutes of Eliz. “ cannot receive too liberal a construction, or be too much extended in suppression of fraud.” Travelling out of the issue before him, he does say in this case that “ the 27 of Eliz. does not go to voluntary conveyances, merely for being voluntary, hut to such as are fraudulent.”
And in Watson vs. Routledge, (2 Cowp. 705,) A. D. 1777, he said something to the same effect. But in this case, the question now at issue did not arise. The prior voluntary conveyance was for love and affection to a nephew, a son of the grantor’s *54 sister. The second conveyance was to another nephew, in consideration of £200, for a property proved to be worth £2000. This was considered no purchase at all, hut a gift. It was considered a fraudulent artifice and combination, on the part of the grantor and second grantee, to defeat the first; and so it was adjudged.
In the dicta, which Lord Mansfield suffered to fall from him in the two last mentioned cases, he forgot that he had himself decided to the contrary, in the prior case of Emery vs. Chapman. And in Hill vs. Bishop of Exeter, (2 Taunt. 82,) decided by Lord Mansfield in 1809, we find him declaring that as “ to the general doctrine that voluntary settlements, however reasonable, are void against a subsequent purchaser in consideration of money, there can be no doubt, for very strong cases have decided, that if a man after marriage make the most prudent settlement on his wife and children, such a' deed as every wise man must approve, if the father is dishonest enough to sell it afterwards for money, he may.” I think after this, his dictum in the intermediate case of Cadogan vs. Kennet, is entitled to hut little weight. Indeed, he himself intimates, that the latter case was not considered in reference to the authorities that might have been cited, tie says, that in the argument, he had expect- ■ ed an authority, but did not get it. And in Watson vs. Routlege, he supported his opinion by cases that are not considered as cases of voluntary conveyances, but as cases in which the settlements were supported by valuable consideration, such as the consideration of marriage, &c.
In Evelyn vs. Templar, (2 Bro. C. C. 148,) A. D. 1787, it was decided by Lord Thurlow, that a prior voluntary settlement by a husband after marriage, though not indebted at the time, was void against a subsequent purchaser, though with notice.
In Bothell vs. Martyr, (1 B. & P. N. R. 332,) A. D. 1805, it was held by Sir James Mansfield, “ that it cannot now be held, that a prior voluntary conveyance shall defeat a conveyance to a purchaser for valuable consideration, without overturning the settled and decided law.” He regretted that a construction had *55 prevailed, ■which rendered notice to the subsequent purchaser immaterial. This, I will remark, is the only part of the construction of the 27 of Eliz., which has been regretted by the English Judges. And in the American cases, this principle of the English decisions, has not been followed, but notice has been considered as destroying the right of a subsequent purchaser to have a prior voluntary settlement vacated in his behalf.
In 1808, the elaborately considered case of Ottey vs. Manning, (9 East, 59,) was decided by Lord Ellenborough, in which it was held, that a voluntary- settlement of lands, in consideration of natural love and affection, is void against a subsequent purchaser for valuable consideration, though with notice of the prior settlement before all the purchase money was paid, or the titles executed ; and though the settler had other property at the time, and was not indebted; and though there was no actual fraud in the transaction. I cannot resist the temptation of quoting the triumphant vindication by Lord Ellenborough, of the construction of the 27th Eliz., which the English Judges have adopted. He observes that “ the Judges might very well apprehend, that subsequent purchasers might be continually defrauded by such secret conveyances, if they should be held good ; and that when the question was between one who had paid a valuable consideration for an estate, and another who had paid nothing, it was a just presumption of law, that such voluntary conveyance, founded only in consideration of affection and regard, if coupled with a subsequent sale, was meant to defraud those, who should afterwards become purchasers for valuable consideration ; and that a different construction would have so narrowed the operation of the Statute, as to leave the persons meant to be protected by it, subject to almost all the mischiefs intended to be remedied. And it is certainly more fit upon the whole, that a voluntary grantee should be disappointed, than that a fair purchaser should be defeated.” The case of Otley vs. Manning has placed this rule of construction upon immutable foundations. I here close my review of the English cases. To trace them further would be altogether a work of supererogation.
*56 I shall notice only two of the American decisions upon this subject out of South Carolina. The first of these to which I invite your attention, is that of Sterry vs. Arden, (1 Johns. Ch. 261.) Chancellor Kent, than whom no greater name has ever adorned the judicial station in America, thus sums up the question : “ Here then,” says he, “ is the case of a fair voluntary conveyance, made by a father to his daughter, he not appearing to be indebted at the time, and a subsequent sale made by him with intent to defeat that settlement, but made for a valuable consideration, and to a purchaser chargeable • only with notice in law. The question arising on this first point, is definitively settled in England by determinations of a recent date, in the four great Courts at Westminster. And it is impossible for me not to feel all the respect, which is justly due to decisions of such great weight and authority.” “It has been suggested,” continues he, “that this is a.principle settled in England since our revolution; but it appears to me, that the late cases have declared no new doctrine, and have only followed the rule as they found it long before settled, by a series of judicial decisions of too much authority to be then shaken.” In this case, the purchaser had heard that the vendor had made some provision for his daughter of the Greenwich street property, which was the subject of the purchase. This the learned Chancellor construed to be implied notice; and decided, that he would not hold the purchaser affected with the implied notice. But he intimates if the notice had been actual, he would not have been entitled to claim against the prior voluntary conveyance. The voluntary deed was set aside in favor of the subsequent purchaser.
I have already alluded to the case of Cathcart vs. Robinson, (5 Peters, 264.) Chief Justice Marshall says, “ the rule, which has been uniformly observed by this Court, in construing statutes, is to adopt the construction made by the Courts of the country by whose Legislature the Statute was enacted. This rule may be susceptible of some modifications, when applied to British statutes, which- are adopted in any of these States. By *57 adopting them, they become as entirely our own, as if they had been enacted by the Legislature of the State. The received construction in England, at the time they are admitted to operate in this country, indeed, to the time of our separation from the British empire, may very properly be considered as accompanying the statutes themselves, and as forming an integral part of them.” It would be arrogant in me to endeavor to add any thing to the force of these observations, on that part of the subject. The Chief Justice then proceeds to remark, “ at the commencement of the American revolution, the construction of the Stat. 27 of Eliz. seems not to be settled.” The error of this conclusion, I think, has been sufficiently demonstrated in the foregoing review of the British decisions.
I pass on to consider the judicial interpretations which have been given to the 27 Eliz., in South Carolina. The cases bearing on the question are very few, which is only to be accounted for, on the supposition that the law has been regarded as settled. As far as the decisions, or any expression of opinion on the part of the Judges, have gone, they are in the strictest conformity with the doctrine established by the English decisions ; with this exception only, that a subsequent purchaser, with notice, is not entitled to set aside a prior voluntary settlement.
The case of Barrineau vs. McMurray & McGill, (3 Brev. 204,) presented some circumstances that might have been regarded as amounting to actual fraud. It is not certain, therefore, that in the view of the whole Court, the decision turned upon this construction of the Stat. 27 Eliz. But Judge Brevard, after some remarks upon the facts, says, “how far the deed is to be considered valid, or sufficient to transfer the estate in opposition to the prior deed to Belsey Brown, must turn on the true construction of the 27th of Eliz.”
He goes on in the broadest terms, to adopt the construction of the English Courts. This doctrine, he observes, “ has been sometimes doubted, in consequence of certain expressions of Lord Mansfield, in Cadogan vs. Kennet and Watson vs. Routledge. It seems to me that in those cases, Lord Mansfield has *58 confounded the rights of creditors, with those of purchasers ; •whereas, the Statutes of 13 and 27 Eliz. appear to have different objects in view. He says truly, that voluntary conveyances may be good against creditors ; but it does not follow that they are so against purchasers. Voluntary conveyances are not void, merely because they are voluntary, but because from the circumstance of their being voluntary, coupled with the circumstance of a subsequent sale and conveyance, for valuable consideration, by the same person who made the voluntary conveyance, it is to be collected and legally inferred, pursuant to the 27 of Eliz.. that the voluntary conveyance was fraudulent; and because the statute declares such voluntary conveyance void as against such purchaser.”
In Hudnal vs. Wilder, (4 McC. 294,) this question was considered, and decided. I say decided ; for on a careful examination, I can come to no other conclusion. It was an action of Trover, for a negro named Frank. And the circumstances of the case were these. One Luke Norris, then the owner of the slave in question, on the 13th Feb., 1809, conveyed the negro, with other real and personal property, to Hudnal, the plaintiff, in trust, for the sole and separate use of his own wife for life, remainder to such children of the marriage as should be living at her death, remainder to himself. He was much indebted at the time, a circumstance which, though very material as regards the claims of creditors, is not very material as regards the rights of a subsequent purchaser for valuable consideration, unless an actual fraud was intended against the rights of creditors. For the Stat. 27 Eliz., by the most uniform construction, makes the prior voluntary settlement void as to the subsequent purchaser, whether the donor be indebted or not at the time of the gift. On the 17th March, 1818, Norris, on the point of removing to the west, sold Frank to Teasdale, the defendant’s testator, for $900, which was paid in cash. There was some evidence to the effect that Teasdale had notice of the prior voluntary settlement ; but it was not made clear that he had such notice, before he had completed the sale, and paid the purchase money. *59 The action was brought by Hudnal, the trustee, against Wilder, Teasdale’s executor. Thus the issue was directly made between the party claiming under the prior voluntary conveyance, and one claiming under a subsequent purchaser, for valuable consideration made nine years afterwards. It is difficult to conceive a case in which the question under discussion could in a more direct manner be presented for the judgment of the Court, than Hudnal vs. Wilder. Upon the question, whether notice would affect the claim of the subsequent purchaser, the Court was with the plaintiff; thus modifying to this extent the English decisions. They adopted, in this particular, a construction which the English Judges have regretted had not been adopted in England from the first, but which they found had been so well established, that they did not consider themselves at liberty to modify it. But in other respects, and particularly upon the question now before this Court, the decision in Hudnal vs. Wilder conformed strictly with the English decisions. The verdict was for the defendant. The plaintiff, on the hearing before the Court of Appeals, had the benefit of the judgment of that Court, as to the effect of notice on the rights of the subsequent purchaser. The evidence on that point not being clear, and the law having been presented to the jury in accordance with the opinion of the Court of Appeals, they refused to disturb the verdict on that ground. The other questions before the Court were, first, whether the Stat. 27 Eliz. embraced in its purview conveyances of personal property, which was decided in the affirmative. And the great and principal question of the case was that which I am now considering. . Hear Judge Nott, the organ of the Court, on this subject. “ It has already been remarked,” he says, “ that the English decisions under the 27 Eliz. have gone the whole length of declaring that a subsequent sale to a bona fide purchaser, even with notice, shall prevail against a prior voluntary deed. These decisions, I shall undertake by and by to shew, cannot be supported by any just construction of the statute. But so far as they have gone to declare, that a subsequent sale to a. bona fide purchaser without notice, shall *60 itself be evidence of fraud to avoid a voluntary deed, I do not know that they have ever been questioned. And we have been so much in the habit of respecting the English decisions as authority, on all their statutes which have been made of force here, that I do not recollect that we have ventured to put a different construction upon one, which has come down to us through a train, of decisions, stamped with the approbation of the able judges of that country.” The defendant was permitted to retain'his verdict upon this construction; a construction which, I have shewn, was adopted at a period contemporaneous with the enactment of the law, and which has prevailed through every succeeding age and generation, in England, down to the present times, with as little variation as can be challenged for any other important principle of the English jurisprudence. And I have also shewn it to be a construction which has been adopted in South Carolina, whenever the question has been mooted in our Courts; and once directly in the way of decision, by an able body of Judges, sitting as a Court of Appeals in the last resort, in a case where the rights of the parties turned directly upon that construc+ion. If I am to have any respect for the authority of English decisions, upon the English statutes, (made of force by a solemn Act of our Legislature,) transmitted to us in an unbroken series through nearly three centuries • if I am to have any respect for the decisions of our own Courts, solemnly affirming the English interpretations; if I am not to cut loose from the control of all precedents, and the exposition of remote times in regard to an old statute; expositions made by abler and wiser judges than myself, then I am not permitted to adopt any other construction of the 27 Eliz., than that I have contended for.

Appeals dismissed.