FREDERICK SMITH & another *vs.* MARY AGNES ALLEN.

A legal contract and promise of marriage made in good faith by a woman to one who has executed to her a deed of land, for the purpose of inducing her to marry him, furnishes a good consideration for the deed; and she will be entitled to hold the land against his creditors, although the marriage is prevented by his death.

BILL IN EQUITY, praying that certain real estate conveyed by a deceased partner of the plaintiffs to the defendant might be decreed to be partnership assets, and that the defendant might be ordered to convey the same to the plaintiffs, for the benefit of the creditors of the partnership. The case was reserved by *Hoar*, J., for the determination of the whole court, upon facts which are stated in the opinion.

*A. B. Merrill*, for the plaintiff. The land in question, being distinctly identified as the thing into which the partnership assets have been converted, and in which they now exist, may be recovered of any person holding the same under Paige without consideration. Colly. Part. §§ 125–135, and cases cited. 2 Story on Eq. § 1253, and cases cited. *Le Breton* v. *Peirce*, 2 Allen, 8. The defendant is not a purchaser for value. The conveyance was not made in consideration of an agreement on her part to marry Paige. No such agreement had then been made. The conveyance was not the subject of any agreement whatever. It was a mere gift. *Lockyer* v. *Simpson*, Moseley, 300. An intention to secrete the property from creditors is disclosed; and under such circumstances, an actual marriage would not make the defendant a purchaser for value. *Columbine* v. *Penhall*, 1 Sm. & Gif. 256. But, at all events, there having been no marriage, the consideration failed. Although a marriage is held to be a sufficient consideration, *ex post facto*, to support a previous conveyance made in consideration of the intended marriage, it has nowhere been held that an unperformed promise of marriage is sufficient. *Forbush* v. *Willard*, 16 Pick. 42. *Gardner* v. *Webber*, 17 Pick, 407, 413. *Sterry* v. *Arden*, 1 Johns. Ch. 261. *Raymond* v. *Sellick*, 10 Conn. 480. *Smith* v. *Sherman*, 4 Cush. 408.

*C. W. Loring*, (*S. Snow*, with him,) for the defendant, in addition to cases cited for the plaintiffs, cited 4 Cruise Dig. (Greenl. ed.) tit. xxxii. *c.* 28, §§ 57, 58, 61; *Harrison* v. *Cage*, 1 Ld. Raym. 386; *Eppes* v. *Randolph*, 2 Call, (Va.) 125; *Seward* v. *Jackson*, 8 Cow. 406; *Magniac* v. *Thompson*, 7 Pet. 348; *Kirk* v. *Clark*, Pre. Ch. 275; *Whelan* v. *Whelan*, 3 Cow. 537; *Campion* v. *Cotton*, 17 Ves. 264; *Pollard* v. *Lyman*, 1 Day, 156; *Thorp* v. *Thorp*, 12 Mod. 459; *Pordage* v. *Cole*, 1 Saund. 320, *n.* 4; *Woodward* v. *Cowing*, 13 Mass. 216.

MERRICK, J. The plaintiffs are the surviving partners of the late firm of Smith, Lougee & Co. of San Francisco. The estate of which they seek to recover possession by judgment in this suit against the defendant, was purchased by Paige, the deceased partner, and was paid for by him with money which he secretly

and fraudulently abstracted from the funds of the company. The company is now insolvent, and the plaintiffs claim to have a right to recover possession of the demanded premises, that they may apply the avails of the estate towards the payment to their creditors of the several sums due to them. As the joint property of partners is always deemed to be a trust fund primarily to be applied to the payment of partnership debts, their creditors have a right to pursue and reclaim it, or the product of it, into whatever form it may have been changed, from the possession of all persons who have not acquired a superior title to it. 2 Story on Eq. §§ 1253, 1259.

The estate thus purchased and paid for by Paige with the money of the company was conveyed by him to the defendant. This bill, therefore, can be maintained against her to recover the possession of it, unless she was a purchaser thereof in good faith, without notice of the fraudulent misconduct of Paige, and for a valuable consideration. But if she was such a purchaser, then she acquired a superior title to the estate, which, having become absolutely vested in her by the conveyance, could not afterwards be defeated by the creditors of her grantor. 2 Story on Eq. § 1258. 1 Ib. 108, 381.

It is immaterial at what time the consideration was paid or passed, if it passed before she had any notice of the fraud, and before any claim of title was set up or asserted against her by the surviving partners, or by the creditors of the company. For it is a well settled principle that a deed which is voluntary or fraudulent in its creation, and voidable by creditors or subsequent purchasers, may become good and indefeasible by matter *ex post facto.* 4 Kent Com. (6th ed.) 463. *Sterry* v. *Arden,* 1 Johns. Ch. 261.

Upon examination of the uncontroverted evidence produced on behalf of the defendant, it is apparent that Paige conveyed the demanded premises to her to induce her to enter into an engagement to marry him. On the 11th of April 1853, his wife, Sarah Ann Paige, died at San Francisco. And in a letter bearing date the 24th of June then next following, addressed by him from that place to the defendant, then resident in this state, he

offered himself to her in marriage. He urged her acceptance of his offer, and among other things said, " The estate " — referring to the demanded premises — " you may regard as your homestead, and I trust it will be a very dear spot to you, the same as it was to your dear Aunt Sarah, and the children of our mutual love." The import and significance of this proposal cannot be mistaken or misunderstood ; it was manifestly tendered as an independent provision for her support, which might prevail upon and induce her to accede to his wishes. On the 15th of the next ensuing month of July he wrote to his agent Goldsbury, enclosed in his letter a power of attorney from himself, and directed him to make, execute and deliver a deed of the demanded premises to her. Accordingly Goldsbury, in pursuance of the power and of the directions given to him, executed the deed, which was delivered to and accepted by her on the 8th of the following month of September. Of course, after the offer which had been made to her, she perfectly understood the object and purpose of the conveyance. And in a letter bearing date the 29th of October — which was a little less than two months after her acceptance of the deed — written and addressed by her to Paige, and which was received by him upon the 6th day of the ensuing month of December, on which day he acknowledged its receipt, she distinctly accepted his offer and made an unqualified promise to marry him. The correspondence between the parties was continued, and their contract to marry and be married to each other remained in full force during his life. Their marriage was prevented by his death, which occurred early in the following year, in Oregon, where he went on a journey of business to which he had alluded in one of his previous letters to her.

It is not alleged or pretended that the defendant had any knowledge or suspicion of the fraudulent acts of Paige. On the contrary, it is manifest from all the facts and circumstances which have been disclosed in the case that she believed and had reasonable cause to believe that he was a man of wealth, engaged in successful and prosperous business, and that throughout the whole transaction, and in contracting her engagement

to him, she conducted herself in perfect good faith. The only question therefore is, whether her contract and promise to marry him constituted a good and valuable consideration for the estate which he had conveyed to her.

There is no doubt that marriage is a valuable consideration. It has always been so regarded. Chancellor Kent says it is held to be of high consideration, and of such weight and force that a marriage formally solemnized subsequently to the conveyance will make a mere voluntary deed good and effectual, and will fix the interest in the estate conveyed indefeasibly in the grantee. 4 Kent Com. (6th ed.) 463. It was so expressly determined in the case of *Sterry* v. *Arden,* above cited. And it is there stated by the court that, although nothing was said by the parties concerning the consideration for the conveyance, either at the time of the solemnization of the marriage, or in the negotiation which preceded it, yet the law will presume that the property conveyed for that purpose did constitute some part of the consideration which induced the party who received it and who was to be benefited by it to enter into that relation. *Huston* v. *Cantril,* 11 Leigh, (Va.) 176. If, therefore, the defendant had been actually married to Paige on the 29th of October, when she promised to marry him, she would be deemed to have been a purchaser for a valuable consideration, and would be held to have taken the estate conveyed to her, free and purged of any fraud against his partners or creditors which he might have committed. Her title in that case would have been clear and indefeasible. And in reference to the question of the sufficiency and value of the consideration, and consequently of the validity of the title acquired by the conveyance, there does not appear to be any real and substantial distinction between a marriage formally solemnized, and a binding and obligatory agreement, which has been fairly and truly and above all suspicion of collusion made, to form such connection and enter into that relation. All the consequences of a legal obligation accompany such an agreement. The law enforces its performance by affording an effectual remedy against the party who shall without legal excuse fail to fulfil it. But a contract of this kind is not to be

regarded as a valuable consideration, merely because damages commensurate with the injury may be recovered of the party who inexcusably refuses to fulfil it. It is peculiar in its character, and has other effects and consequences attending it. It essentially changes the rights, duties and privileges of the parties. They cannot, while it exists, without a violation of good faith, as well as of the material legal obligations to which it subjects them, negotiate a contract for such alliance with any other person. A woman who has voluntarily made such an agreement, cannot without indelicacy, and so not without exposing herself to unfavorable observation and to some loss of public favor and respect, seek elsewhere, except for good and substantial reasons for withdrawing from an engagement by which she has bound herself, for preferment in marriage; and thus her promise and agreement to marry a particular person essentially change her condition in life. They materially affect not only her opportunities but her right to attempt in that way to improve it. A legal contract and promise made in good faith to marry another must, therefore, like an actual marriage, be deemed to be a valuable consideration for the conveyance of an estate, and will justly entitle the grantee to hold it against subsequent purchasers, or the creditors of the grantor.

Applying these principles to the facts disclosed in the present case, it follows as a necessary consequence that the bill cannot be maintained. Judgment must therefore be entered for the defendant.