## PATTERSON v. CAMPBELL.

1. An insolvent debtor is not allowed to appropriate the proceeds of his labor to investments in real estate for the advancement, or in the name of his children; and if he procures a conveyance to be made to a child under such circumstances, the estate may be reached by an execution creditor.

Writ of Error to the Court of Chancery for the first District.

THIS bill was filed by Campbell, an execution creditor of George Patterson, against him and his daughter, Alabama Patterson, an infant, alledging that one Hall, at the instance of her father, and in consideration of means furnished by him, had conveyed to the daughter a certain lot of land. The prayer is, that the trust may be declared and the lot subjected to the payment of the plaintiff's executions, these having been returned no property, &c.

The infant defendant, by her guardian, answered the bill, denying all knowledge of the facts asserted, and calling for proof. The other defendant answered, admitting the executions, &c. as well as the deed from Hall, but denies all fraud, or that the deed was so taken for the purpose of hindering, delaying or defrauding creditors. He states the facts of the transaction to be these, to wit: In the summer of 1843, Patterson contracted with Hall to do work for him as a blacksmith about the erection of a cotton press, and by the contract

was to receive a certain amount in cash, to meet his necessary disbursements for materials, and for the balance Hall was to convey the lot in question to his infant daughter, and the deed was made accordingly. The contract was made before the work was commenced.

The testimony in the cause fully supports the answer of Patterson, but shows also, that while the parties were contracting, Patterson stated there were judgments against him, and that he wished to secure some of the benefit of his labor to his infant daughter, and therefore wished the deed for the lot to be made to her. The lot was in the possession of Patterson and his family, they residing on it.

The Chancellor considered, that a trust resulted under these circumstances, and decreed the lot to be sold in satisfaction of the complainant's judgments.

This decree is assigned as error.

P. HAMILTON, for the plaintiffs in error, insisted—

1. The statute of frauds has no application here, as that extends only to fraudulent grants—not to purchases. [2 Vern. 19; 12 Peters, 198; 3 Monroe, 157; 1 Dana, 534; Roberts on F. Con. 463; 1 P. Wms. 111.]

2. The transaction stands then solely on the common law, and although a trust generally results from the furnishing the purchase money, yet when money is advanced by the father, and a conveyance is taken to the child, it is an advancement. [2 Sug. on Vend. 145; Math. on Presumtive Ev. 61; Sidmouth v. Sidmouth, 17 En. Ch. Rep. 447; 2 John. Ch. 405; 1 Dana. 534.

3. There is no case in the English courts where property purchased by the parent, in the name of the child, has been subjected to the parent's debts. [Proctor v. Warren, Viner, Tit. Fraud. a. 2; 2 Vern. 490; 2 Atk. 477; 2 Vern. 683.[ When the conveyance is to the father and son, yet after the death of the father the estate is not subject to his debts. [2 Vern. 490.] Roberts lays down the same rule, and all the text writers agree, there is no case where the purchase in the name of the child has been subjected. [2 Sug. on Vend. 147; 2 Swan. 600.] In 3 Monroe, 157, stock purchased by a fa-

ther in the son's name, was held not to be subject in favor of creditors. So it has been held, the claim of the child cannot be defeated by the devise of the parent. [2 Vern. 19 ; 2 Cox, 92 ; 15 Ves. 50.] Nor by his mortgage. [2 Vin. 120.] Nor by a marriage settlement. [Math. on Pr. Ev. 60,] The only case in which the property has been subjected is Doyle v. Sleeper, 1 Dana, 531, and then the court was divided.

4. But if a purchase made by the parent in the name of the child, can be reached in some cases, it must be when the means used in the purchase could be made subject to the debt. [3 Mon. 157 ; 1 Dana, 531 ; 1 Bibb, 306 ; 2 Litt. 222; 1 Hop. 79.] Here the lot was purchased with the future labor of the parent, and it is said in 1 Bibb, 306, to be absurd to suppose this can be subjected by the creditor.

5. It cannot be contended the father might not agree to labor for Hall for nothing, and if he did so, that the creditor could compel a payment from Hall. If it cannot, what reason is there to forbid his appropriation to the present or future support of a child ? This view is strongly supported by the case cited from Dana.

J. A. CAMPBELL, for the defendant in error, argued—

1. There is much contrariety in the decisions on the subject of Chancery jurisdiction to subject equitable interest to the payment of debts. The subject is of no interests now, as the act of 1844, (P. P. p. 107,) removes the difficulty. The early decisions of this court were in favor of the jurisdiction. [2 Stew. 378 ; I Dana, 534.]

2. The present is a clear case of an attempt to defraud creditors and the conveyance is a trust for the benefit of Patterson. [20 John. 554; 4 John. 687 ; 3 Wend. 618.]

3. The transaction was evidently one to secure the property for the use of Patterson, though held in his daughter's name.

GOLDTHWAITE, J—The only question in this case is, whether, at the present day, an insolvent debtor will be permitted to appropriate the proceeds of his labor to investments in real estate, for the advancement, or in the name of his children, in defiance of his creditors ? We are clear in the

opinion there is no law to tolerate this condition of things. It is unnecessary to trace, step by step, the course of legislation on this subjection, or to show how courts of chancery first assumed the jurisdiction to subject equitable assets in payment of legal judgments. There was a time, doubtless, when the creditor, although armed with an execution, could not pursue all the property of his debtor at law, and on this idea, courts of equity would aid their judgments only when a lien would be created if the assets, instead of being equitable, were legal. The cases cited by the defendant's counsel, show very satisfactorily the rise and extent of the chancery jurisdiction in England. We apprehend, however, that when our statutes gave the writ of *fi. fa.* against the lands, as well as the chattels of the debtor, and provided also for garnishee process against *his* debtors, and who were possessed of *his* *effects*, that the jurisdiction of chancery immediately attached in its most unlimited sense. In this view, it is very probable there was no occasion to enact the statute of 1844, which confers jurisdiction in express terms. [Acts of 1843, 107.]

The question then resolves itself into one of right, not of jurisdiction, and it is said the debtor has the moral right to appropriate the proceeds of his labor to the advancement of his children in preference to his creditors. Of the moral duty of the parent to provide for the support and education of his children, there can be no doubt, and perhaps as little, that it is paramount to the obligation to creditors ; but the providing for support is quite a different thing from investing them with the title to property, which in most, if not all cases, must necessarily be a secret trust enuring to the benefit of the parent. The consequences which would result to society from the sustaining such a proposition, are conclusive against it. If one can secure the profits of his labor to his children, why not the profits of his trade, of his occupation, or profession ? Instead of attempts by honest industry or successful exertion to create the means to pay creditors, the children of debtors would be the exclusive beneficiaries of their efforts, and might never be aware that their parents were otherwise than rich. It is said if the debtor chose he might work gratuitously, and the creditor would have no right to complain, and that there

is no difference between this and giving the proceeds of his labor to his children. It may be so, but we apprehend the question, in either case, would equally arise, whether a trust was intended for the debtor's benefit. The reasoning of the court in Dayle v. Sleeper, 1 Dana, 531, seems to us as unanswerable to shew, that the rights of creditors must be satisfied before the debtor can make, by his means, or his labor, a permanent provision for his children.

Decree affirmed.