Mr. Chief Justice Sharkey
delivered the opinion of the court.
Henry filed this bill for the purpose of setting aside certain conveyances therein mentioned,'and to have his own title to the land in question perfected. The land was sold under execution as the property of James Fullerton, and Henry became the purchaser.
Fullerton was the owner of three eighths of a section of land, being section No. 19, in township No. 13, range No. 7, which he mortgaged to the . Union Bank on the 13th of April, 1839. The equity of redemption was sold under execution, and purchased by James Mallet, who afterwards conveyed in fee simple to Elizabeth Fullerton, the wife of James. The purchase by Mallet, and the reconveyance by him to Elizabeth, are both alleged to have been fraudulent, because the purchase was made for James Fullerton.
Fullerton also owned other lands, to wit, the northeast quarter, and the west half of the southeast quarter of section No. 24, in township No. 13, of range No. 6, and also the east half of the northwest quarter of section No. 30, in township No. 13, range No. 7. This land he conveyed to his brother Daniel by deed dated the 1st of October, 1839, and in 1841 Daniel conveyed to Elizabeth Fullerton. These conveyances are alleged to have been made to defraud creditors and without consideration.
In October, 1843, the complainant recovered a judgment against James Fullerton, and had his execution levied on all the above named lands, which were sold in 1844 by the sheriff, who conveyed, to the complainant as purchaser.
The complainants claim to the first mentioned parcel of land *633 is easily disposed of. The land was mortgaged to the Union Bank, which mortgage may be still in existence, unsatisfied for any thing that we know. The bill is silent on this subject. In this Fullerton had but an equity of redemption, and admitting that Mallet purchased for Fullerton, he had but an equity of redemption still. The sheriff did not profess to sell any thing more. Of course the complainant acquired no greater interest by the purchase under his own execution. We have decided ■that an equity of redemption cannot be sold under execution at law.
Henry, therefore, acquired no title to the mortgaged land. It may be that the mortgage has been extinguished by payment, or by virtue of the act of the legislature, which authorized the sale of the assets of the Union Bank, but as we cannot know this, the bill should have brought this matter to light.
As to -the second parcel of land, we think the proof shows that the conveyance by James to Daniel was made to defraud creditors, and that it was reconveyed to Elizabeth without consideration, with full knowledge of the object of the first conveyance. The consideration expressed in the first deed is two thousand dollars. The first witness, Wm. Theveatt, says Daniel Fullerton was a poor man, and pursued the business of a rough carpenter and common laborer, and had his mother and sister to support. The witness did not think that Daniel paid any part of the purchase-money expressed. James Fullerton was somewhat .in debt, and he had heard him say he never intended to pay a debt due to Boyd. He exercised the same control after the conveyance as before. He stated to the witness, that he intended to have his land and personal property sold by the sheriff to evade the payment of the debt to Boyd.
The second witness, Isabella Jamison, who is a sister of the Fullertons, states that Daniel told her the deed was made without consideration to evade the payment of the debt to Boyd. She says there was no part of the consideration paid, and James was not indebted to Daniel; that James continued to exercise the same acts of ownership after the conveyance, as he had done before. Daniel also told this witness, that he con *634 veyed the land to Elizabeth at the request of his brother James, and Elizabeth told the witness her husband had given her the land. The witness did not think Elizabeth paid any money for the land. The witness says, she knew the deed from James to Daniel was a contrivance to defraud creditors. Elizabeth had some little property, but she took the whole of it away with her when she left the county. This witness also states other circumstances, all of which conduce to establish the fraud.
Margaret Abby, the daughter of James Fullerton, was examined. She stated that her father was very much embarrassed, but her testimony is in other respects not important, as it relates mostly to the mortgaged land. The consideration expressed in the deed' from Daniel to Elizabeth is two hundred dollars. This, of itself, is a suspicious circumstance, as the conveyance to him expressed the consideration of two thousand dollars. If he had really paid that sum, it is quite improbable that he would have sold for one tenth of it. We can see no room to doubt but what the whole was a mere contrivance to defraud creditors, and comes completely within the statute. H. & H. Dig. 370.
But a further question arises, Is such a deed void as to subsequent creditors % The bill alleges, that a portion of the money was due to the complainant before the execution of the conveyances, but that charge is not sustained by proof. From the record of the complainant’s judgment, which is made an exhibit, it appears that his action was founded on certain promissory notes, the first of which was dated the 2d of February, 1841, and the others after that time. The complainant is, therefore, a subsequent creditor.
This question has given rise to much discussion under similar statutes. We have given it a very careful examination. The result of the authorities entitled to most weight, seems to be, that voluntary conveyances are not necessarily void as to subsequent creditors; the presumption of fraud arising from indebtedness, or fraud in law, may be repelled by circumstances tending to show the absence of actual fraud. But if a subsequent creditor can show fraud in fact, by showing that the conveyance *635 was made to avoid future debts about to be contracted, or to defraud existing creditors, the conveyance is void, not only as to present but as to subsequent creditors also. And this seems to be the rule in England under the statute of 13 Elizabeth, as well as in this country. See 2 Kent, Comm. 441, and note ; 4 Ib. 463, 464; Reade v. Livingston, 3 Johns. Ch. Rep. 481; Sexton v. Wheaton, 8 Wheat. 229 ; Damon v. Bryant, 2 Pick. R. 411; Hinde v. Longworth, 11 Wheaton, 199; 1 Story, Eq. 381, 382, § 356. A conveyance to be valid must be bond fide. If it rest upon a foundation fraudulent in fact, it can have no validity beyond the immediate parties, as to whom it is made valid to prevent the perpetration of fraud, but as to all others it is void, and being so at its inception it never can become valid.
Henry, therefore, acquired title to the second parcel of land. That far the decree was erroneous, and it must be reversed, and a decree rendered in this court. •