17   217
100  206
17   217
105  347

No. 41.—PHILIP A. CLAYTON, plaintiff in error, *vs.* DEMPSEY BROWN, defendant in error.

[1.] Where personal property is conveyed, by a husband, to a trustee, for the benefit of his wife and children, the subsequent possession by the husband being consistent with the object of the deed, is no evidence of fraud.

[2.] To make a voluntary conveyance void against creditors and purchasers, within the Statute of *Elizabeth*, it must be covinous and fraudulent, and not voluntary only.

Trover, &c. in Muscogee Superior Court. Tried before Judge WORRILL, December, 1854.

This was an action for a negro man, Charles, brought by Dempsey Brown against Philip A. Clayton. Brown claimed under a sale by the Sheriff, of the negro, as the property of one Reeves. Clayton claimed under a deed of trust from Reeves, for the benefit of the wife and children of Reeves. The depositions of one Holmes stated, among other things, that Reeves was indebted to him $134, by note, which note he sued to judgment. Objected to by Clayton, on the ground that there was higher and better evidence. Over-ruled, and

Clayton excepted.    In answer to cross-interrogatories, he said, " All I know of his indebtedness to others, in the years 1836 and 1837, is, that there was a great complaint by his creditors, that he did not or would not pay." Objected to by Clayton as *hearsay*.    Over-ruled, and Clayton excepted.

Plaintiff below offered in evidence a transcript from the record of Bibb Inferior Court, showing—1st. The proceedings by P. A. Clayton, in 1838, to establish a lost note and mortgage made by Reeves, the foreclosure of the mortgage, the *fi. fa.* and return of *nulla bona;* also, several other *fi. fas.* issuing from that Court in 1838, against James T. Reeves. Clayton's Counsel objected on the ground, the testimony was irrelevant.    The Court over-ruled the objection, and Clayton excepted.

The Court charged the Jury, " that if, from the evidence, they believed that Reeves remained in possession of the property, after the making of the deed of trust, such possession was evidence of fraud, and they were to presume fraud in the making of the deed from such possession in Reeves ; but that the defendant might rebut such presumption ; and if satisfactorily explained, the presumption was removed." To this charge Clayton excepted.

The Court farther charged, " that if the deed was a voluntary conveyance to Clayton by Reeves, for the benefit of Reeves" wife ; and if the negro was levied on by the Sheriff, under a *fi. fa.* and sold, and Brown became the purchaser without actual notice of such deed, then Brown's title was good ; that the registration of the deed was not sufficient notice to Brown."

To all of this charge Clayton excepted.

On these several exceptions error was assigned.

Judge BENNING having been of Counsel, did not preside.

INGRAM & CRAWFORD, for plaintiff in error.

DOUGHERTY, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Without caviling about minor matters, we would say, that we are not satisfied with the manner in which this case was submitted to the Jury. If the record speaks right, it was not put upon the true ground; and upon the issues which ought to control it.

The Court instructed the Jury, that if James T. Reeves remained in possession of the property named in the trust deed, executed by him to Philip A. Clayton, for the benefit of his wife and children, after the conveyance was executed, that it was evidence from which fraud should be presumed.

Now, that fraud may be committed by a debtor upon his creditors, as well by using his children as instruments as strangers, will not be denied. And such was the opinion of this Court in *Fleming vs. Townsend*, (6 *Ga. R.* 103.) But that is not the question. Is the continued possession of property under such a deed, even a badge of property? If it be true that the wife and children have the strongest claims upon the bounty of the husband and father, and that it is his duty to provide for them, and the possession is consistent with the nature of the instrument, how, we would ask, is that possession converted into a badge of fraud? If we have not misapprehended the rule itself, as well as the reason upon which it is founded, the retention of possession by the vendor of personal property, after an absolute sale, is, *prima facie*, fraudulent and conclusively so, if unexplained, *because*, retaining possession under such circumstances, is contrary to the nature of the conveyance. But no such presumption does or can legitimately arise, where the continued possession is reconcilable with the transfer. So, where personal property, as in this case, is conveyed by a husband and father, to a trustee, for the benefit of his wife and children, the subsequent possession of the husband and father, is consistent with the object of the deed, and is no evidence, whatever, of fraud in behalf of a subsequent purchaser. The possession of the vendor is, in fact and in judgment

of law, the possession of his family. And for myself, I am strongly inclined to think that such would be the construction which the law would put upon the transaction, unless the husband and father were living separate and apart from the *cestui que trust.*

[2.] We cannot concur with His Honor, the presiding Judge, upon the other point of his charge—which was, that if Brown bought the boy Charles, one of the negroes named in the deed, at Sheriff's sale, without actual notice of the deed from Reeves to Clayton, that he acquired a good and indefeasible title to the slave, and the Jury must so find.

Far be it from us to controvert the rule, that a gift or conveyance, founded merely upon a *good* consideration, such as blood or affection, may not be set aside by creditors, if it appear that the grantor was in embarrassed circumstances when he made it. For it has been well said, that a man must be just before he is generous; and that he is bound, both legally and morally, to pay his debts before giving away his property. Still, we do maintain that the mere fact that a man is indebted at the time, will not render his gift, *ipso facto*, void. (*Hinde's Lessee vs. Longworth,* 11 *Wheat. R.* 199. *Verplanck vs. Sterry,* 12 *Johns. R.* 538. *Reade vs. Livingston,* 3 *Johns. Ch. Cas.* 497, 501. *Sexton vs. Wheaton,* 8 *Wheat. R.* 229. *Blunett vs. Bedford Bank,* 11 *Mass. R.* 421. 1 *Story's Eq. Ju.* §362, 362, *a.* 363, 364, 365. *Cadogan vs. Kennett, Cowp. R.* 432.)

And although the cases exhibit some apparent diversity on this point, it will be found, upon a careful examination, to arise only from a difference of opinion as to what amount of indebtedness or *indebtment*, to adopt a more modern word, constitutes sufficient evidence of fraud. In the sections to which we have already referred, in *Story's Equity Jurisprudence*, beginning further back, at 355, and running to 365, inclusive, Judge *Story* reviews the principal cases, and gives the weight of his authority against the doctrine, that every voluntary assignment, for which a valuable consideration is not given by a person indebted at the time, is *per se*, void as against creditors.

Indeed, the enlightened exposition of the Statutes of 13 and 27 *Elizabeth*, by Lord *Mansfield*, as applicable to this class of cases, is now pretty generally adopted, in England as well as throughout this country. The world begins at last to realize the fact, however slow and reluctant to admit it, that there are some other people in the world besides creditors; and that a husband and father, instead of having his body divided out amongst his creditors, as directed by the old Roman law, or subject to perpetual incarceration in the dungeons of a jail, as authorized by the English law, may give his property to his wife and children, and labor for their sustenance and support, provided he does so fairly, and with no intent to perpetrate a fraud upon his creditors. (*Townsend vs. Westcot*, 2 *Beav. R.* 340, 345. *Salmon vs. Bennett*, 1 *Conn. R.* 525.)

Said Lord *Mansfield* in *Cadogan vs. Kennett*, "The Statute 13 *Eliz. c.* 5, which relates to frauds against creditors, directs, 'that no act whatever, done to defraud a creditor or creditors, shall be of any effect against such creditor or creditors.' But then, such a construction is not to be made in support of creditors, as will make third persons sufferers. Therefore, the Statute does not militate against any transaction, *bona fide*, and where there is no imagination of fraud. And so is the Common Law. But if the transaction be not *bona fide*, the circumstance of its being done for a *valuable consideration*, will not, alone, take it out of the Statute. I have known several cases where persons have given a fair and full price for goods, and where the possession was actually changed; yet, being done for the purpose of defeating creditors, the transacaction has been held fraudulent, and therefore void."

"One case was, where there had been a decree in the Court of Chancery and a sequestration. A person, with knowledge of the decree, bought the house and goods belonging to the defendant, and gave a full price for them. The Court said, "the purchase being with a manifest view to defeat the creditor, was fraudulent; and therefore, notwithstanding a valuable consideration, void." So, if a man knows of a judgment and execution, and with a view to defeat it, purchases the debtor's goods

it is void, because the purchase is iniquitous. It is assisting one man to cheat another, which the law will never allow. There are many things which are considered circumstances of fraud. The Statute says not a word about *possession;* but the law says, if, after a sale of goods, the vendor continue in possession and appear as the visible owner, it is evidence of fraud, because goods pass by delivery; *but it is not so in case of a lease, for that does not pass by delivery.*"

"The Statute of 27 *Eliz. c.* 4, does not go to *voluntary* conveyances *merely*, as being *voluntary*, but to such as are *fraudulent*. A fair *voluntary* conveyance may be good against creditors, notwithstanding its being voluntary. The circumstance of a man's being indebted at the time of his making a voluntary conveyance, is an *argument* of fraud. The question, therefore, in every case is, whether the act done is a *bona fide* transaction; or whether it is a trick and contrivance to defeat creditors."

In the subsequent case of *Doe ex dem. Watson et al. vs. Rutledge*, (*Ib.* 705,) the Lord Chief Justice elaborates the same principle at great length, showing, conclusively, that to make *voluntary* settlements void, they must be *covinous* and *fraudulent*, and not voluntary *only*.

I have quoted thus liberally from these authorities, fearing that erroneous notions prevailed respecting this doctrine. A man may be worth millions, and sell a single slave, and get his full value; still, if the conveyance was made to hinder and delay creditors, the sale would be set aside, as to them. On the contrary, a voluntary conveyance, under certain circumstances, will be protected, even against a debt due and owing at the time of the transfer. It, in every such case, is a question of intention. The Statute, itself, makes it so. "With intent to defraud," are its words. And with this exposition of the law, and with a single additional remark, that *notice*, actual or constructive, has nothing to do with the matter, we shall return this case for a re-hearing.