STEWART v. ROGERS *et al.*

Voluntary conveyance: TO CHILD: ON WHAT VALIDITY DEPENDS. Whether a voluntary conveyance to a child will be void as to creditors of the father, in the absence of an existing actual intent to defraud, will depend upon its reasonableness, and the condition of the grantor as respects his ability to pay his creditors out of the property retained by him. The facts that were, in the present case, held sufficient to render such a conveyance void as to existing creditors, stated by DILLON, Ch. J.

*Appeal from Madison District Court.*

THURSDAY, JULY 23.

CREDITOR'S BILL — FRAUDUDENT CONVEYANCES, ETC. — The plaintiff is a judgment creditor of John A. Rogers. The

defendants are the said Rogers and his sons, daughters and son-in-law. The object of the present suit is to set aside as fraudulent certain conveyances of lands made by Rogers to his co-defendants. In April, 1860, he conveyed, without any pecuniary consideration to his four children, two sons and two daughters, two hundred acres of land each, or 800 acres in all. This is admitted to be a gift to the children, all of whom, except one, was of age, or nearly so.

In March, 1861, the said John A. Rogers, conveyed 90 acres to each of his said two sons and two sons-in-law, making by these last conveyances 360 acres, or 1,160 acres altogether. Defendants claim that the lands conveyed in March, 1861, were sold, and not given, to them. In April, 1860, the said John A. Rogers owed the following debts: To one John C. Ewing about $1,300; to Benjamin James, about $1,200; to one James Allen, about $5,500, and to the plaintiff, Stewart, about $1,100.

All of these debts were secured by mortgages on real estate other than that conveyed to the children, except the debt due James, which was secured by chattel mortgage. All of these debts have been paid except the plaintiff's, and a balance due to Ewing. It is necessary briefly to explain the origin and character of the debts to Ewing and the plaintiff.

Prior to April, 1860, the said John A. Rogers became indebted to one West, and this debt subsisted in January, 1860. West purchased of one Vanter (with whom he had been in business) $5,000 worth of cattle and hogs. Vanter, it seems, had failed, and was owing what he termed confidential debts to Ewing and to Stewart, the present plaintiff. In January, 1860, West applied to the said John A. Rogers for security, and Rogers executed in January, 1860, at the request of West, one note to Stewart (the plaintiff) for $1,000, or thereabouts, and

one to Ewing for $1,200, or thereabouts, and secured these notes, which were executed at the same time, by two mortgages, one to Stewart and the other to Ewing, on 480 acres of land belonging to the said Rogers and other than that subsequently conveyed by Rogers to his children. The mortgages were simultaneously executed and recorded, and both covered the same 480 acres of land.

On the 2d of April, 1861, the plaintiff, Stewart, obtained judgment on his note for the sum of $1,200, and an order for a general execution. And on the same day Ewing obtained a like judgment on his note. Neither Ewing or Stewart sought in these actions to foreclose their mortgages on the 480 acres of land, which stood as equal security for their respective notes.

In May, 1861, Stewart issued an execution on his judgment against Rogers and levied upon the 480 acres of land embraced in his mortgage. The sheriff returns that it was not sold for want of bidders.

In October, 1861, plaintiff issued another execution on his judgment, and the same was levied upon certain personal property. The sheriff returns, that, finding the title thereto doubtful, and, a bond of indemnity being refused, he released the same from levy. He also returns, that he could find no other property on which to levy.

In June, 1865, the plaintiff issued another *fi. fa.*, on which the sheriff returned " no property." The evidence shows that Ewing issued an execution on his judgment, levied the same upon the said 480 acres of land (embraced in his mortgage as well as in that of the plaintiff), bought the same in at $2 per acre, or $960 in all, obtained sheriff's certificate and finally a sheriff's deed. This left a balance due to Ewing on his judgment. The present suit was commenced in July, 1865. The pleadings and testimony are voluminous; but the material facts are above given except so far as stated in the opinion.

Stewart v. Rogers.

The District Court dismissed the bill and the plaintiff appeals.

*Leonard & Mott* for the appellant.

*S. G. Ruby* for the appellees.

DILLON, Ch. J. — It is proposed briefly to state our views of the case without entering at large into an exam-

VOLUNTARY
CONVEYANCE:
to child: on
what validity
depends.

ination of the testimony. The case naturally divides itself into two parts, viz., the convey-ances of the 800 acres of land in April, 1860, and the conveyances of the 360 acres in March, 1861.

The conveyances of April, 1860, of the 800 acres by John A. Rogers to his four children, were confessedly voluntary. This, Mr. Rogers and the children all admit; though it is in testimony that these conveyances were made by the father (whose daughters were married and his sons nearly of age) in pursuance of a previous purpose on his part to make such a division of his estate among his children.

In the absence of an existing actual intent to defraud, whether a voluntary conveyance to a child will be void as to the creditors of the father will depend upon its rea-sonableness, and the condition of the grantor as respects his ability to pay his debts out of the property retained by him. The authorities are not uniform, but such has been the view of this subject heretofore taken in this court. See *Carson* v. *Foley*, 1 Iowa, 524; *Lyman* v. *Cessford*, 15 id. 229; *Hook* v. *Mowre*, 17 id. 195; *Cul-bertson* v. *Lucky*, 13 id. 12; *Sexton* v. *Wheaton*, 1 Am. Lead. Cases, 68, 72, and cases cited.

Recognizing the rule above stated, as it is illustrated in its application in the authorities cited and referred to, it is our opinion, — in view of the large amount of property conveyed to the children, the large indebtedness of the donor at the time, the comparatively small amount of real

property not embraced in this disposition, the short period of time which elapsed after the conveyence in question, and the confessed insolvency of the voluntary grantor, — that the conveyances made in April, 1860, cannot be sustained as against the plaintiff.

If made without any meditated fraud, and in pursuance of a previous purpose on his part to make such a division of his estate among his children, still these conveyances would operate, if sustained, to effect a fraud upon his creditors existing at the time.

Respecting the conveyances of the 360 acres in March, 1861, it is our opinion that these cannot be sustained as against the plaintiff, Stewart.

At this time suits were pending, or about to be brought, against Rogers. He was fearful that the mortgaged property might possibly not pay his debts.

He does not claim that he conveyed this last 360 acres to his children to make a provision for them, for he had done that before; but he claims that he made a sale of this land to them, and that they paid him for it. We have examined the whole evidence very carefully, and are satisfied that these were not *bona fide* sales and conveyances. The price alleged to have been paid was very inadequate, and the evidence of payment by no means satisfactory.

The decree dismissing the plaintiff's petition is reversed and the cause remanded, with directions to the court to charge and apportion the amount due Stewart upon the lands conveyed by Rogers in April, 1860, and on the 4th of March, 1861; and if not paid by such time as the court shall fix, to order them to be subjected to the plaintiff's judgment. The District Court will except from the lands so to be charged any which were *bona fide* conveyed by any of the defendants prior to the institution of this suit.

Reversed.