## HART v. FLINN *et al.*

**Fraudulent conveyance: FROM PARENT TO CHILD.** Conveyance of real estate by parents to their daughter, the consideration alleged being a cow and its increase given to her by her grandfather many years before, and services performed by her while in the family during two or three years after attaining her majority, and without any agreement that she was to receive compensation. *Held*, under the circumstances, fraudulent as against creditors of the father.

*Appeal from Clinton District Court.*

FRIDAY, APRIL 25.

ACTION in chancery to set aside a deed made by Mary Ann Flinn and her husband John Flinn to their daughter Mary Ann Conor, for a lot in the town of De Witt, and subject the same to the payment of a judgment recorded by plaintiff, in the circuit court of Clinton county, on the ground that the conveyance was fraudulent, having been made to hinder and delay creditors. The parties just named are made defendants to the action. Upon a final hearing on the merits, plaintiff's petition was dismissed. He now appeals to this court.

*Cotton & Cross* for the appellant.

*W. E. Leffingwell & Bro.* and *P. B. Wolf* for the appellees.

BECK, Ch. J. — Plaintiff's judgment was rendered April 26, 1871, upon a promissory note, executed by John and Mary Ann Flinn, October 8, 1867, and after maturity, in April or May, 1870, transferred to plaintiff. The precise date suit on this note was commenced does not appear. When the note was executed, defendant Mary Ann held, in her own name, the title to certain real estate, consisting of town lots and lands of considerable value, and when the note was transferred to plaintiff, she still owned a homestead, and the house and lot

Hart v. Flinn.

and 120 acres of land, besides the real estate, a house and lot, involved in this action.

August 13, 1870, John and Mary Ann Flinn executed to their daughter and co-defendant, Mary Ann Conor, a deed for the property in dispute and the other house and lot owned by them and not occupied as a homestead. The land had been levied upon by attachment issued against the husband in the suit still pending. Neither of the parties had personal property subject to seizure for their debts. Before the conveyance to the daughter, actions had been brought against them which were settled, and at the time they owed other debts, besides the one upon which plaintiff commenced suit. Mrs. Conor has not had possession of the property conveyed to her, nor received rents and profits therefrom, nor exercised acts of ownership over it. The deed was made to her without her knowledge, and was filed for record by her parents, and has since been retained by them.

In our opinion the evidence authorizes the conclusion that the conveyance was entirely voluntary and made without consideration. The parents claim that they were largely indebted to their daughter on account of property belonging to her. which they had sold and the proceeds of which they had received to be held for her use, and also for services rendered by her after she attained her majority. The first item of indebtedness, as they explain it, originated in this way: When Mrs. Conor was about two or three years old her grandfather gave to her a cow which her parents were to keep and its increase and proceeds therefrom were to be given to the daughter when she reached her majority. Under this arrangement the cow was kept by the parents for many years and its increase, and finally the cow itself, was sold by them. Mrs. Conor lived with her parents for two or three years after her majority. For her services during this time at the rate of $3 per week, they claim to have been indebted to her. Their entire indebtedness for those services and for money received from the proceeds of the sale of the cow and its increase, they claim was $2300. The whole story of their indebtedness, as it is circumstantially

related by the parents in their evidence, is highly improbable, and without contradictory evidence or extrinsic circumstances conflicting therewith, would leave our minds in doubt as to its credibility. We need not particularly refer to the circumstances which impress us with the improbability of their story. It would naturally be presumed that if they were indebted to their daughter in so large a sum and sought to make payment thereof by the conveyance of property to her, she would have had some knowledge of the indebtedness and the transaction by which she was paid. But she seems to be utterly ignorant that her parents were indebted to her in any sum and does not know the purpose for which the deed was made to her. To give here certain interrogatories propounded upon her examination and her answer thereto, will the most effectually sustain the conclusion we draw from her testimony. They are as follows:

"Did you purchase of your mother the property in De Witt, described in plaintiff's petition, if so, when did you purchase the same, and what consideration did you pay her for it?

"Ans. I did. I do not know for certain how long ago it was, nor what year it was in, they first gave it to me. I did not give any thing for it; it was their own wishes.

"When did you first know that they executed a deed to you for it?

"Ans. I did not know that either; I did not expect it. It was their own wishes.

"What reason did your mother give you for deeding the said property to you?

"Ans. I do not know; I thought it was because I deserved it.

"Why did you think you deserved it?

"Ans. Because I helped to earn it."

She then states that she worked for her parents like other children till she was twenty-one years of age, living at home with them, and securing from them her support, clothing and education, and that there was no agreement by her parents to pay her for her services. In reply to a question upon that point

she states positively that her parents were not owing her any thing at the time the property was conveyed to her.

It clearly appears from the daughter's testimony that there was no indebtedness of the parents to her and that the conveyance was voluntary and utterly without consideration. The fact that she had lived with the family performing the usual services and duties as a daughter, and receiving her support as one of the family, created no liability on the part of the parents in the absence of a contract binding them, to pay for her labor. *Scully* v. *Scully*, 28 Iowa, 548.

In our opinion the direct and positive evidence of the daughter to the effect that her parents were not her debtors, overthrows the improbable story of their large indebtedness originating in the cow and its increase. We conclude therefore that the deed was without consideration. We are satisfied too that it was made for the purpose of protecting their property from the debts of the defendant and especially from plaintiffs' judgments. The condition and relation of the parties, the circumstances of the execution of the deed, and other facts developed in the evidence, some of which we have above stated, lead to this conclusion. The property described in plaintiffs' petition ought therefore to be held liable to plaintiff's judgment.

The degree of the district court dismissing plaintiff's petition will be reversed and a decree entered here setting aside the deed to Mrs. Conor and subjecting the property described therein to the payment of plaintiffs' debt and for such other proper relief as the nature of the case demands.

Reversed.